BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALAN GRAHAM,

Plaintiff,

v.

PILKINGTON NORTH AMERICA, INC., NIPPON SHEET GLASS CO., LTD, PILKINGTON HOLDING INC., and KOICHI HIYOSHI, an individual.

Defendants.

______________________________/

Case No.

Hon.

**COMPLAINT AND JURY DEMAND**

Alan R. Graham ("Mr. Graham") states as his Complaint against Defendants Pilkington North America, Inc. ("PNA"), Nippon Sheet Glass Co., Ltd ("NSG"), Pilkington Holding Inc. ("PHI") and Koichi Hiyoshi ("Hiyoshi-san") as follows:

1. This case arises from Defendants PNA's and NSG's wrongful breach of Mr. Graham's long-standing express employment agreement and all Defendants discriminatory action against Mr. Graham in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., their national origin discrimination in violation of Title VII, 42 U.S.C. § 2000e–2(a) and violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") M.C.L. § 37.2701, *et seq*.

2. Mr. Graham was a 21-year employee with an impeccable work history. During those 21 years he was promoted on numerous occasions to key management and global board positions, each time with additional responsibility. Without warning, in August 2019, he was abruptly suspended and then terminated. He was 62-years of age. His employer was a Japanese

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

owned and managed entity. In one of his positions he was replaced with a significantly younger individual. In another, he was replaced with a significantly younger Japanese national. Defendants terminated Mr. Graham without cause and refused to pay him the severance and other benefits he was owed under his employment agreement.

**PARTIES, JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over Mr. Graham's age discrimination claims arising under ADEA pursuant to 28 17.U.S.C. § 1331 and Section 7(c) of the ADEA, 29 U.S.C. § 626(c).

4. This Court has federal question subject matter jurisdiction over Mr. Graham's Title VII claims pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Mr. Graham's state law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims, such that all claims form part of the same case or controversy.

6. Defendants are either citizens of the State of Ohio or are Japanese citizens. Mr. Graham is a citizen of the State of Michigan.

7. Mr. Graham does not share a state of citizenship with any Defendant. This Court has diversity jurisdiction over all defendants pursuant to 28 U.S.C. § 1332.

8. Mr. Graham exhausted his administrative remedies and complied with all statutory prerequisites to his ADEA and Title VII claims. Mr. Graham filed a charge of age discrimination and national origin discrimination on or about May 21, 2020 with the Equal Employment Opportunity Commission ("EEOC"). He subsequently filed an amended charge of discrimination specifically alleging claims against all entity defendants on October 13, 2020 and brought this action within 90 days of his receipt of an EEOC Right-To-Sue Letter.

9. The United States District Court for the Western District of Michigan has personal jurisdiction over PNA, NSG and PHI because they do business in Michigan and in this District, and because some of the acts complained of and giving rise to the claims alleged occurred in and emanated from this District.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

11. Plaintiff Mr. Graham is an individual who, at all times relevant to this dispute, has resided in and worked within the State of Michigan. At the time of his termination, Mr. Graham was employed by and/or held positions with Defendants PNA, NSG and PHI. For each position, his office was in Petoskey, Michigan. He also resided in Petoskey, Michigan.

12. Mr. Graham is an "employee" as defined in the Michigan Elliott-Larsen Civil Rights Act.

13. Defendant PNA is a corporation organized and existing under the laws of the State of Delaware and headquartered at 811 Madison Ave, Toledo, Ohio, 43697.

14. PNA manufactures and markets glass and glazing products for the architectural, automotive and established creative technology sectors to support and contribute to NSG Group's future growth. PNA is a wholly-owned subsidiary of NSG.

15. Defendant NSG is headquartered in Tokyo, Japan. NSG is one of the world's largest manufacturers of glass and glass glazing products for architectural, automotive and established creative technology to support NSG Group's future growth. The products include flat glass for construction, building materials, automobiles, glass fiber products, and technical glass.



BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

16. Upon information and belief, Defendant PHI is a corporation organized and existing under the laws of the State of Delaware and headquartered at 811 Madison Ave, Toledo, Ohio, 43697.

17. Defendant PHI is a member of the NSG Group of companies in the glass and glass products manufacturing industry, servicing customers worldwide providing products in the architectural, automotive and technical sectors.

18. Defendants NSG, PNA and PHI each meet the statutory definition of "employer" as defined in the Michigan Elliott-Larsen Civil Rights Act.

19. Defendant Hiyoshi-san meets the statutory definition of supervisor.

20. Defendant Hiyoshi-san is a resident of Japan.

21. Defendant Hiyoshi-san regularly communicated with Mr. Graham through in person meetings in Michigan and by mail, email, and phone at his office in Petoskey, Michigan.

22. Defendant Hiyoshi-san met with Mr. Graham and participated in his suspension meeting.

23. Defendant Hiyoshi-san conspired with the other Defendant to breach Mr. Graham's Employment Agreement and to wrongfully terminate Mr. Graham. Mr. Graham's termination took place in Michigan.

24. Defendant PNA owns and operates a manufacturing facility in Michigan, located at 2121 W. Chicago Road, Niles, Michigan.

25. Defendant PNA negotiated and executed the 2001 supplement to Mr. Graham's employment agreement while Mr. Graham resided in Michigan.

26. Defendant PNA regularly communicated with Mr. Graham through in person meetings in Michigan and by mail, email, and phone at his office in Petoskey, Michigan.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

27. Defendant NSG negotiated and executed the 2011 supplement to the employment agreement while Mr. Graham resided in Petoskey, Michigan.

28. Defendant NSG regularly communicated with Mr. Graham through in person meetings in Michigan and by mail, email, and phone at his office in Petoskey, Michigan.

29. Defendant PHI regularly communicated with Mr. Graham through in person meetings in Michigan and by mail, email, and phone at his office in Petoskey, Michigan.

30. Mr. Graham's office in Petoskey, Michigan was financed by Defendants, including but not limited to the purchase of the installation of a satellite dish and structure to support dish, WiFi/internet service, computer, printer, telephone, express courier services, travel expenses and a vehicle.

31. Defendant NSG, PNA, PHI and Hiyoshi-san maintained an ongoing contact with Mr. Graham and the State of Michigan during Mr. Graham's employment.

32. At all times relevant to this dispute Defendant NSG's directors, officers, management and other employees ("NSG personnel"), including Hiyoshi-san, participated in meetings with Mr. Graham and PNA in Michigan, including meeting with Mr. Graham, PNA customers, NSG vendors, and attorneys, Pepper Hamilton, and attended numerous other corporate events and meetings in Michigan, as well as attend to other business matters. NSG, PNA and PHI management, including Hiyoshi-san, repeatedly, over the period of many years, met with Mr. Graham in person in Michigan, and by email and telephone to him in Michigan. Defendants NSG, PNA and PHI, including Hiyoshi-san, regularly communicated with Mr. Graham by mail, email, and phone at his home in Petoskey, Michigan.

33. Defendant PNA, in concert with Defendant NSG, wrongfully terminated Mr. Graham's employment by letter that was mailed to Mr. Graham at his home in Petoskey, Michigan.

34. All Defendants conspired to and did breach Mr. Graham's Employment Agreement via the termination letter that was sent to Mr. Graham's home in Michigan.

**STATEMENT OF FACTS**

35. In November 1998, Mr. Graham began employment with PNA who, at the time, was doing business as Libbey-Owens-Ford Co. His duties included working with senior group management and external consultants to restructure an underperforming North American business for a possible divestiture, merger, or combination.

36. In 2000, PNA's legal work was outsourced to Pepper Hamilton. Mr. Graham worked with PNA and Group executive management to disband PNA's internal Legal Department and outsource PNA's legal work to Pepper Hamilton, a national law firm.

37. On April 13, 1999, the terms of Mr. Graham's employment were memorialized in a written employment agreement, a copy of which is already in the possession of all Defendants.

38. Pursuant to his employment agreement, Mr. Graham was initially employed in the capacity of Vice President, Secretary, and General Counsel. He later became General Counsel of the Americas. The position was sometimes referred to by Defendants as VP General Counsel NA/SA. This position required him to spend the majority of his time on global projects.

39. Under the terms of the agreement, PNA was obligated to pay Mr. Graham a base salary, no less than what he was currently earning and subject to periodic increases as determined by the company. During the term of the agreement, as components of his total compensation, Mr. Graham was entitled to participate in all bonus and incentive plans, benefit plans, stock plans, employee life, health, accident and retirement plans, and other perquisites, all of which could be no less than favorable than those benefits in effect as of April 13, 1999.



BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

40. The agreement was effective as of April 13, 1999 for an initial one-year term and, beginning on the first anniversary date, it automatically renewed on each anniversary date, for an additional year.

41. The agreement could be terminated by PNA without cause. In such an event, PNA is obligated to pay Mr. Graham: (i) continued payment of his then current base compensation and continuation of company paid benefits, including life insurance and health coverage for him and his dependents for a period of one year following termination; (ii) the amounts due to him under any benefit plans for the fiscal year in which he was terminated, prorated to the date of termination and based upon a performance rating of "competent"; and (iii) the target bonus payable for the calendar year in which he was terminated.

42. The agreement could be terminated by PNA for cause, but only if there was a (i) willful misfeasance or non-feasance of duty, (ii) gross negligence in the performance of duties, (iii) conviction of a felony be a court of competent jurisdiction, (iv) material violation of any of the restrictions set forth in the Employee Invention and Confidentiality Agreement, or (v) material infringement of PNA's Standards of Business Conduct (as they existed in 1999).

43. Several years later, on November 12, 2001, the parties executed a supplement to Mr. Graham's employment agreement. A copy is already in the possession of all Defendants.

44. The 2001 amendment provided for additional benefits in the event of his termination or in the event of PNA's breach of the agreement, which included, but were not limited to, (i) salary continuation equal to 12 months of earned pay, but not less than CY01 earned pay, (ii) STIP at target through the salary continuation period, (iii) computer and cell phone usage for 6 months, (iv) health insurance, life insurance and disability for 12 months, (v) vesting of all



BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

unvested plans, and a (vi) positive letter of recommendation. In addition, Mr. Graham was entitled to out-placement assistance.

45. On February 17, 2011, Mr. Graham's employment agreement was again supplemented. Defendants PNA and NSG were parties to the agreement. Mr. Graham's role was expanded to include the position of NSG Group Compliance Officer, effective March 1, 2011. A copy is already in the possession of all Defendants. In his expanded global position, he reported to Defendant Hiyoshi-san, in his capacities as (i) Head of Group Legal and (ii) Company Secretary. Mr. Graham also reported directly to the Audit Committee.

46. The April 13, 1999 employment agreement, together with the 2001 and 2011 supplements, comprise Mr. Graham's employment agreement with Defendants PNA, NSG and PHI (hereinafter, "Employment Agreement").

47. During his twenty-one (21) years of employment with NSG and PNA, Mr. Graham was promoted on several occasions. He held the positions of Vice President, Secretary, Country Manager, Group Ethics and Compliance Officer and General Counsel of the Americas, with the following responsibilities: Corporate Affairs, Strategic Planning, Government Relations, Regulatory (Environmental, Health and Safety), Human Resources, Communication, Customs and Trade, and Real Estate and Property Management, as well as special projects. As to PHI, Mr. Graham held the position of President, PHI. Mr. Graham also held the positions of Board Director, PHI, and was a member of the NSG Group Sustainability Committee and the NSG Group Strategic Risk Committee (under the supervision of the Management Committee).

48. During all times throughout his twenty-one (21) years of employment, Mr. Graham's primary work location was in Michigan. Defendants were aware that Mr. Graham worked from Michigan.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

49. In mid-August 2019, Defendants met with Mr. Graham and, without prior warning or notice, suspended his employment. Defendant Hiyoshi-san, in his individual capacity and representing NSG and PHI, was present at the suspension meeting. Upon information and belief, Defendant PNA was represented by Spencer Harris, Regional Vice President, Human Resources.

50. On August 21, 2019, Defendants wrongfully terminated Mr. Graham's employment via a letter that was sent to his home in Petoskey, Michigan. Defendants did not have cause to terminate Mr. Graham's employment.

51. The reasons stated in Defendants' termination letter were pretext. Defendants' conspired to and did terminate Mr. Graham on account of his age and national origin, in violation of the ADEA, Title VII and the ELCRA.

52. As direct and proximate result of Mr. Graham's unlawful without cause termination Mr. Graham is entitled to all of the benefits owing under the Employment Agreement. Mr. Graham has and will experience emotional distress, humiliation, loss of reputation and mental anguish and damages as a result.

**COUNT I**
**BREACH OF CONTRACT**
**(DEFENDANTS NSG AND PNA)**

53. Mr. Graham repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

54. Mr. Graham had a contract (Employment Agreement) with Defendants NSG and PNA.

55. Mr. Graham fully performed under the Employment Agreement.

56. Defendants NSG's and PNA's termination was without cause as defined in the Employment Agreement and Defendants are required to pay and provide Mr. Graham the compensation, benefits, and all other obligations owed him under the Employment Agreement.

57. Defendants NSG and PNA have wrongfully refused to pay Mr. Graham any of the compensation and other benefits owed to him under the Employment Agreement.

58. Defendants NSG's and PNA's actions were willful and/or with malice.

59. Defendants NSG's and PNA's egregious behavior has resulted in Mr. Graham's humiliation, distress, mental anxiety, insulted honor, and outrage.

60. Mr. Graham's emotional distress was a foreseeable consequence of Defendants' breach.

61. Defendants NSG's and PNA's actions were voluntary and showed a wanton disregard for the plaintiff's rights.

62. As direct and proximate result of Defendants NSG's and PNA's breach of contract, Mr. Graham has and will experience lost wages and benefits and all other rights associated with his Employment Agreement; Mr. Graham has and will experience emotional distress, humiliation, loss of reputation and mental anguish.

WHEREFORE, Plaintiff Alan Graham request that this Court enter a Judgment as to Count I in his favor and against Defendants NSG and PNA in an amount in excess of $75,000, along with attorneys' fees and costs and any other relief this Court deems appropriate.

**COUNT II**
**VIOLATION OF ADEA – TERMINATION OF EMPLOYMENT**
**(DEFENDANTS NSG, PNA AND PHI)**

63. Mr. Graham repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.



BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

64. Defendants NSG, PNA, and PHI discriminated against Mr. Graham with respect to the terms, conditions, and privileges of employment due to their predisposition to discriminate based on Mr. Graham's age.

65. Under the ADEA, Defendants were obligated to refrain from discriminating against Mr. Graham because of his age.

66. In violation of this statutory obligation, Defendants terminated Mr. Graham because of his age.

67. Defendants then filled Mr. Graham's position with a significantly younger individual.

68. Defendants' reason for terminating Mr. Graham was pretextual. They failed to allow Mr. Graham to fulfill an alleged registration requirement, despite his request to do so, yet they allowed his significantly younger replacement to register.

69. Defendants' conduct was willful and malicious entitling Mr. Graham to liquidated damages.

70. Mr. Graham is entitled to recover his economic losses, past and future, plus liquidated damages as provided for in the ADEA.

WHEREFORE, Plaintiff Alan Graham request that this Court enter a Judgment as to Count II in his favor and against Defendants NSG and PNA in an amount in excess of $75,000, along with attorneys' fees and costs and any other relief this Court deems appropriate.

**COUNT III**
**VIOLATION OF ELCRA - TERMINATION OF EMPLOYMENT**
**(ALL DEFENDANTS)**

71. Mr. Graham repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

72. Defendants discriminated against Mr. Graham with respect to the terms, conditions, and privileges of employment due to its predisposition to discriminate based on his age.

73. Under the ELCRA, Defendants were obligated to refrain from discriminating against Mr. Graham because of his age.

74. In violation of this statutory obligation, Defendants terminated Mr. Graham because of his age.

75. Defendants' alleged reasons for Mr. Graham's termination were a pretext for age discrimination.

76. As a direct and proximate result of Defendants' conduct, Mr. Graham has suffered and will continue to suffer severe damage as alleged above including emotional distress, humiliation, embarrassment and loss of reputation.

WHEREFORE, Plaintiff Alan Graham request that this Court enter a Judgment as to Count III in his favor and against All Defendants in an amount in excess of $75,000, along with attorneys' fees and costs and any other relief this Court deems appropriate.

**COUNT IV**
**VIOLATION OF TITLE VII – NATIONAL ORIGIN DISCRIMINATION**
**(DEFENDANTS NSG, PNA AND PHI)**

77. Mr. Graham repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

78. Defendants NSG, PNA, and PHI discriminated against Mr. Graham with respect to the terms, conditions, and privileges of employment due to their predisposition to discriminate based on Mr. Graham's national origin.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

79. Under Title VII it is unlawful for employers to discriminate against individuals with respect to [their] … national origin and Defendants NSG, PNA and PHI were obligated to refrain from discriminating against Mr. Graham because of his national origin.

80. In violation of this statutory obligation, Defendants terminated Mr. Graham because of his national origin.

81. Defendants then filled Mr. Graham's position with a Japanese national.

82. Defendants' reason for terminating Mr. Graham was pretextual. They failed to allow Mr. Graham to fulfill an alleged registration requirement, despite his request to do so, yet they allowed his replacement to register and have permitted other lawyers, not licensed in the State of Ohio, to continue practicing law for the company.

83. Defendants' conduct was willful and malicious entitling Mr. Graham to liquidated damages.

84. Mr. Graham is entitled to recover his economic losses, past and future, plus liquidated damages as provided for in the Title VII.

WHEREFORE, Plaintiff Alan Graham request that this Court enter a Judgment as to Count II in his favor and against Defendants NSG, PNA and PHI in an amount in excess of $75,000, along with attorneys' fees and costs and any other relief this Court deems appropriate.

**COUNT V**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

85. Mr. Graham repeats and re-alleges each and every allegation contained in the above paragraphs as if fully set forth herein.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

86. Defendants were engaged in a concerted action to wrongfully terminate Mr. Graham. The concerted action was done to accomplish the unlawful purpose of breaching Mr. Graham's Employment Agreement and violating the ELCRA, Title VII and ADEA.

87. Defendants are liable to Mr. Graham for all of his damages.

WHEREFORE, Plaintiff Alan Graham request that this Court enter a Judgment as to Count IV in his favor and against Defendants in an amount in excess of $75,000, along with attorneys' fees and costs and any other relief this Court deems appropriate.

**REQUEST FOR RELIEF**

WHEREFORE, Mr. Graham respectfully requests that this Honorable Court enter judgment in his favor against all Defendants and award him economic and non-economic damages, including but not limited to compensatory damages, exemplary damages and an award of interest, costs, reasonable attorney fees and expert witness fees.

Respectfully submitted,

**BUTZEL LONG, a professional corporation**

/s/*Cynthia J. Haffey*
Cynthia J. Haffey (P57352)
Louis Ronayne (P81877)
150 West Jefferson, Suite 100
Detroit, MI 48226-4452
(313) 225-7000
haffey@butzel.com
ronayne@butzel.com
**Attorneys for Plaintiff**

Dated: March 12, 2021

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint.

Respectfully submitted,

**BUTZEL LONG, a professional corporation**

/s/*Cynthia J. Haffey*
Cynthia J. Haffey (P57452)
150 West Jefferson, Suite 100
Detroit, MI 48226-4452
(313) 225-7000
haffey@butzel.com
**Attorneys for Plaintiff**

Dated: March 12, 2021